# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# COOKEVILLE DIVISION

| | |
|---|---|
| LEE ANN SWAFFORD, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:13-0077 |
| v. | ) Judge Sharp / Knowles |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 16. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 18. Plaintiff has filed a Reply. Docket No. 19.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for Supplemental Security Income ("SSI") on June 21,

1

2010, alleging that she had been disabled since August 29, 2009, due to Hepatitis C, lyme disease, "heart," "panic," "anxiety," and "bipolar." *See, e.g.,* Docket No. 14, Attachment ("TR"), pp. 100, 109. Plaintiff's application was denied both initially (TR 52) and upon reconsideration (TR 53). Plaintiff subsequently requested (TR 67) and received (TR 79) a hearing. Plaintiff's hearing was conducted on March 7, 2012, by Administrative Law Judge ("ALJ") Douglas J. Kile. TR 24. Plaintiff and Vocational Expert, Anne Thomas, appeared and testified. *Id.*

On May 3, 2012, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 6-19. Specifically, the ALJ made the following findings of fact:

> 1. The claimant has not engaged in substantial gainful activity since November 20, 2009, the application date (20 CFR 416.971 *et. seq.*).
>
> 2. The claimant has the following severe impairments: anxiety, depression, bipolar disorder, tobacco dependence, and history of polysubstance abuse (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can perform only simple, non-detailed tasks; contact with coworker and the public should be casual and infrequent; supervision should be direct and non-confrontational; and workplace changes should be infrequent and gradually introduced.
>
> 5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on May 5, 1968 and was 41 years old, which is defined as a "younger individual" on the date the application was filed (20 CFR 416.963).

7. The claimant has a "limited" education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 20, 2009, the date the application was filed (20 CFR 416.920 (g)).

TR 11-18.

On June 8, 2012, Plaintiff timely filed a request for review of the hearing decision. TR 5. On July 23, 2013, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the

> "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that her mental impairments meet or equal Listing 12.05. Docket No. 17, p. 3-8. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed and Plaintiff should be immediately awarded benefits. *Id.* at 8.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. Listing 12.05(C)**

Plaintiff contends that her mental impairments meet or equal Listing 12.05. Docket No. 17, p. 3-8. Specifically, Plaintiff argues that her mental impairments meet the requirements for Listing 12.05(C), because her IQ score is "clearly in the range" required under that subsection. *Id* at 5-6. Plaintiff also argues that her onset was clearly before age 22, because she had lifelong difficulty in learning, and because her mother consumed whiskey while pregnant with her, making it likely that she was born addicted to substances. *Id.* Plaintiff further argues that the ALJ's findings of "moderate" restrictions of daily living, and "moderate" difficulties regarding concentration, persistence or pace are, by definition "severe" impairments, such that they inherently "significantly limit" basic work demands. *Id.* at 6. Thus, Plaintiff contends that her mental impairment "does indeed meet or equal Listing 12.05C." *Id.*

Plaintiff additionally contends that, although the ALJ discussed her mental impairments relative to the listings for depression, anxiety, and substance abuse, he "failed to even factor in the listings for mental retardation, pursuant to Listing 12.05C." *Id.* at 6 (emphasis omitted). Plaintiff argues that the ALJ failed to "engage in any real discussion" regarding Listing 12.05(C) and incorrectly "trivialize[d]" the opinion Ms. Emily Rummel, the psychological examiner. *Id.* at 6-7. Plaintiff asserts that, contrary to the ALJ's statement that Ms. Rummel's credentials were not provided and "there is no indication that [she] is an acceptable medical source" (TR 19), Ms. Rummel's credentials appeared on her report and demonstrate that she is the "very epitome of an acceptable medical source." *Id.* Plaintiff argues that the ALJ's failure to analyze her potential mental retardation under Listing 12.05(C), and his failure to expressly explain why she did not meet the criteria of Listing 12.05(C) warrants remand. *Id.* at 7-8.

Defendant responds that the decision of the ALJ was supported by substantial evidence. Docket No. 18 at 8. Specifically, Defendant argues that the IQ scores provided by Plaintiff were "not reliable," because, *inter alia*, Ms. Rummel saw Plaintiff only once; her report does not show that she was aware of Plaintiff's medical records; and Plaintiff's IQ scores were inconsistent with evidence, including reports from Dr. Tucker and Dr. Shoup. *Id.* at 9-10. Defendant maintains that the Regulations require the ALJ to consider the evidence of record in its entirety, such that the ALJ could reject the IQ results based upon his evaluation of all the evidence. *Id.* at 10. Defendant argues that, since the ALJ found Plaintiff's IQ scores to be unreliable, Plaintiff could not meet or equal Listing 12.05(C) based upon those scores. *Id.* Defendant contends that the ALJ is not required to discuss listings for which there is no evidence that they could be met or equaled, and that accordingly, the ALJ did not overlook or ignore Listing 12.05(C). Instead, Defendant argues that the ALJ was not required to discuss whether Plaintiff met or equaled the listings once he discredited Ms. Rummel's report, because there was no longer any evidence to support her claim that, based upon her IQ scores, she met or equaled Listing 12.05(C). *Id.*

Plaintiff replies that the IQ scores, as determined by Ms. Rummel, were corroborated by a similar evaluation in June 2009. Docket No. 19 at 1, *referencing* TR 53. Plaintiff argues that recent case law has established "a mandatory procedural requirement" that an ALJ provide a discussion in the record of why a claimant with an IQ of under 70 does not meet Listing 12.05(C), such that, when presented with an on-the-record IQ of below 70, the ALJ must take notice of the score and articulate reasons why that score does not give rise to a finding of disability under the Listing. *Id.* at 1-2.

With regard to Listing 12.05, the Code of Federal Regulations states:

9

> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports the onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function...

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 12.05.

As can be seen, the Regulations explicitly require that in order to meet or equal Listing 12.05, the claimant must satisfy the diagnostic description in the introductory paragraph, as well as the criteria contained in paragraphs (A), (B), (C) or (D).

Regarding the IQ score at issue, on March 5, 2012, at the request of Plaintiff's counsel, Ms. Emily Rummel conducted a psychological examination of Plaintiff that included, *inter alia*, administration of the Wechsler Adult Intelligence Scale - Fourth Edition test to Plaintiff. TR 407-12. Upon completion of the examination, Ms. Rummel reported Plaintiff's Composite Scores to be as follows:

| | |
|---|---|
| Verbal Comprehension | 66 |
| Perceptual Reasoning | 79 |
| Working Memory | 69 |
| Processing Speed | 62 |
| Full Scale | 64 |

TR 408.

Ms. Rummel noted that these scores ranked as "extremely low" in all categories except

10

for perceptual reasoning, which ranked as "borderline." *Id.* Regarding Plaintiff's general intellectual ability, Ms. Rummel opined as follows:

> [Plaintiff's] general cognitive ability is within the extremely low range of intellectual functioning, as measured by the FSIQ. Her overall thinking and reasoning abilities exceed those of only approximately 1% of individuals in her age range. She may experience great difficulty in keeping up with her peers in a wide variety of situations that require thinking and reasoning abilities. She performed much better on nonverbal than on verbal reasoning tasks. Such differences in performance, however, are not especially unusual among her peers in general.

*Id.*

With regard to Plaintiff's verbal comprehension, Ms. Rummel opined:

> The Verbal Comprehension Index is designed to measure verbal reasoning and concept formation. She performed comparably on the verbal subtests contributing to the VCI, suggesting that the various verbal cognitive abilities measured by these subtests are similarly developed. However, she may experience great difficulty in keeping up with her peers in situations that require verbal skills.

*Id.*

Of Plaintiff's perceptual reasoning, Ms. Rummel opined as follows:

> The Perceptual Reasoning Index is designed to measure fluid reasoning in the perceptual domain with tasks that assess nonverbal concept formation, visual perception and organization, visual-motor coordination, learning, and the ability to separate figure and ground in visual stimuli. She performed comparably on the perceptual reasoning subtests, suggesting that her visual-spatial reasoning and perceptual-organizational skills are similarly developed.

*Id.*

Regarding Plaintiff's working memory, Ms. Rummel opined:

> Her ability to sustain attention, concentrate, and exert mental

control is in the extremely low range. She had difficulty with the
two tasks that demand mental control. That is, attending and
holding information in short-term memory while performing some
operation or manipulation with it and then correctly producing the
transformed information. This is evidence of weak mental control.

TR 409.

The ALJ accorded no weight to Ms. Rummel's opinion. TR 15. Specifically, the ALJ discussed Ms. Rummel's opinion as follows:

> An independent psychological evaluation was performed by Emily
> Rummel, M.A. in April 2012. Results of Weschler Adult
> Intelligence Scale-IV (WAIS-IV) testing indicated the claimant
> was functioning in the "extremely low range" and there was
> "evidence of weak mental control."
>
> . . .
>
> The independent psychological examination performed by Ms.
> Rummel at the attorney's request indicated the claimant's
> intellectual functioning was "borderline" to "extremely low."
> However, her assertions are wholly unsupported by the overall
> evidence of record and have been afforded no weight. It is
> emphasized that the claimant underwent the examination that
> formed the basis of the opinion in question not in an attempt to
> seek treatment for symptoms, but rather, through attorney referral
> and in connection with an effort to generate evidence for the
> current appeal. Furthermore, the psychologist was presumably paid
> for the report, her credentials are not provided, and there is no
> indication that she has even had a treating relationship with the
> claimant. Only "acceptable medical sources" can give medical
> opinions (20 CFR 416.927(a)(2)), and there is no evidence that Ms.
> Rummel is an acceptable medical source. Additionally, her
> assessment is overly restrictive and inconsistent with the
> preponderance of the other substantial evidence of record.
> Although such evidence is certainly legitimate and deserves due
> consideration, the context in which it was produced cannot be
> entirely ignored (Exhibit B15F).

TR 12, 15 (*citing* TR 407-12).

With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>       . . .

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[2] *See, e.g.,* 20 C.F.R. § 404.1527(d); *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Commissioner*, 276 F.3d 235, 240 (6th Cir. 2002)(*quoting Harris v. Heckler*, 756 F.3d 431, 435 (6th Cir. 1985)). If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

The opinions at issue were provided by Ms. Emily Rummel, M.A., "Senior Psychological

---

[2] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 C.F.R. §1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

Examiner - Health Service Provider," Tennessee License No. PE11281. TR 407. 20 C.F.R. §§ 404.1513(a)(2) and 416.913(a)(2) define "licensed or certified psychologists" as "acceptable medical sources." Senior psychological examiners are required to be licenced under Tennessee law, and may practice without supervision in several areas, including "overall personality appraisal or classification, psychological testing, projective testing, [and] evaluations for disability or vocational disorders." T.C.A. § 63-11-202(c)(2). Accordingly, Ms. Rummel is an "acceptable medical source" under applicable law.

The ALJ in the case at bar apparently did not see Ms. Rummel's credentials on the header of her report (TR 407), or beneath the signature line of her report (TR 409), when he stated that her credentials had not been provided and that there was no evidence establishing that she was an acceptable source who could provide a medical opinion (TR 15). Had the ALJ accorded no weight to Ms. Rummel's opinion solely on these grounds, or solely on the grounds that Ms. Rummel was paid to examine Plaintiff at the request of her attorney, with the purpose of generating evidence for her claim's appeal (TR 15), then Plaintiff is correct that remand would be appropriate. The ALJ in the instant action, however, did no such thing.

First, although the ALJ noted the context in which Ms. Rummel's assessment was ordered and obtained, he explicitly acknowledged that "such evidence is certainly legitimate and deserves due consideration." TR 15. His decision demonstrates that he did, in fact, consider Ms. Rummel's assessment, and he articulated several reasons for his decision to discount it, including: (1) Ms. Rummel's assertions were "wholly unsupported by the overall evidence of record"; (2) there is no indication that Ms. Rummel had a treating relationship with Plaintiff; (3) Ms. Rummel's assessment was not conducted in the course of Plaintiff's obtaining treatment;

15

(4) Ms. Rummel's assessment was overly restrictive; and (5) Ms. Rummel's assessment was "inconsistent with the preponderance of the other substantial evidence of record." TR 15.

Second, as the ALJ stated, Ms. Rummel's opinion contradicts other substantial evidence in the record, including Plaintiff's mental health treatment and the opinions of the State Agency psychologists, discussed by the ALJ as follows:

> The claimant also received conservative treatment for her anxiety, depression, and bipolar disorder. She has been prescribed psychotropic medication by Volunteer Behavior Health Care System and was last seen in January 2011. However, records intermittently noted poor compliance with prescribed medications. Although the claimant has received treatment for her allegedly disabling conditions, that treatment has been essentially routine and conservative in nature. No treating sources in the record assigned any specific mental functional limitations to the claimant (Exhibits B3F and B9F).
>
> . . .
>
> The State Agency psychologists found that the claimant has mild to moderate mental impairments. As experts in the Social Security disability programs, State Agency consultants are uniquely qualified and trained to articulate findings of fact about the nature and severity of a given claimant's impairments. The assessments of these consultants are based on a review of the complete case record, which provides more detailed and comprehensive information than what is generally available to the other sources of record. Said opinions are largely consistent with the objective evidence of record and have been afforded great weight (Social Security Ruling 96-6p) (Exhibits B5F and B13F).

TR 15-16 (*citing* TR 191-261, 276-79, 292-378, 397-400).

Additionally, Ms. Rummel's assessment contradicts Plaintiff's reported daily activities and demonstrated abilities, which the ALJ discussed as follows:

> In activities of daily living, the claimant has moderate restrictions. The claimant reported that she attends to her personal needs, occasionally takes care of her six-year old son, prepares simple

16

meals, cleans, does laundry, and feeds, walks, and waters her dog. In social functioning, the claimant has moderate difficulties. The claimant reported shopping, attending church one to two times a month, using public transportation, and interacting with family and friends. She is apparently able to function in an appropriate manner in the public domain, in such places as doctor's offices, grocery stores, and other facilities. The claimant demonstrated no abnormal social behaviors during the hearing. With regard to concentration, persistence or pace, the claimant has moderate difficulties, as she reported watching television, doing crafts, and driving. At the hearing, the claimant demonstrated average intellectual functioning and was able to understand and follow the hearing proceedings and all lines of questioning. As for episodes of decompensation, there is no indication that the claimant has experienced any episodes of decompensation.

TR 13.

The ALJ properly considered and discussed the medical and testimonial evidence of record in its entirety, including Ms. Rummel's assessment. *See* TR 9-19. As noted, Ms. Rummel's assessment contradicted other evidence in the record, including opinions from State Agency psychologists and Plaintiff's reported activities. *See id.* When there are inconsistent opinions in the record, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). Because the ALJ properly considered the evidence of record, reached a reasoned decision, and articulated the basis for that decision, the Regulations do not mandate that the ALJ accord Ms. Rummel's evaluation greater weight. Plaintiff's contention on this point fails.

While Plaintiff correctly asserts that when evidence indicates that a claimant's I.Q. score is between 60 to 69, the ALJ is required to consider whether the claimant meets Listing 12.05(C) (*see Abbott v. Sullivan*, 905 F.2d 918, 924-25 (6th Cir.1990)), in the case at bar, once the ALJ appropriately discounted Ms. Rummel's assessment, there was no remaining evidence warranting

analysis of Listing 12.05. The ALJ did, however, conduct a full analysis to determine whether Plaintiff had any impairment or combination of impairments that met or medically equaled a listing, and in so doing, specifically addressed Listings 12.04, 12.06, and 12.09. *See* TR 13-14. When analyzing whether the "paragraph B" or "paragraph C" criteria of those listings were satisfied, the ALJ ultimately found that Plaintiff had "moderate restrictions" in her activities of daily living; "moderate difficulties" in social functioning; "moderate difficulties" in concentration, persistence, and pace; and had no episodes of decompensation. TR 13. Because Plaintiff's mental impairments failed to satisfy the "paragraph B" or "paragraph C" criteria, the ALJ determined that Plaintiff's mental impairments did not meet or medically equal a listing. *Id.* Under the facts of this action, absent supporting evidence, the ALJ was not required to evaluate Listing 12.05.

The ALJ appropriately considered the medical evidence regarding Plaintiff's mental health, properly analyzed Plaintiff's functional limitations, and determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. TR 13-14. Plaintiff's argument that the ALJ failed to adequately explain why Plaintiff's impairments neither met nor medically equaled Listing 12.05(C) is unavailing.

Because the ALJ properly evaluated the evidence of record, reached a reasoned decision, and articulated the basis for that decision, and because substantial evidence supports the ALJ's determination, the ALJ's decision must stand.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge